JOHN PERRY, Respondent, v. JOHN C. ROGERS, Appellant.

1. MASTER AND SERVANT — SAFETY OF WORKING PLACE. The obligation of the master to provide a reasonably safe place for his servants to work in does not oblige him to keep the place in a safe condition at every moment of their work so far as its safety depends on the due performance of that work by them and their fellow-servants.

2. BLASTING ROCK — TEMPORARILY DANGEROUS WORKING PLACE — NEGLIGENCE OF FELLOW-SERVANT. When the employer of competent workmen engaged in blasting down a ledge of rock, on the face of which they necessarily work, has provided them with the necessary and proper appliances and with a skillful foreman, the removal, from a spot where a blast has been exploded, of threatening overhanging rock, made dangerous by the work, before undertaking to remove the blasted rock beneath, is an ordinary incidental detail, as to which the employer is not bound to direct a workman, but which may be properly left to the foreman; and if the foreman, on sending a workman to clear a blasted spot, omits to remove or to notify the workman to remove a threatening piece of rock before working directly under it, he is in that respect a fellow-servant, and if the piece falls and injures the workman, the negligence, if there is any except on the part of the workman himself, is that of the foreman as a fellow-servant, and does not constitute a breach of the employer's duty.

*Perry* v. *Rogers*, 91 Hun, 243, reversed.

(Argued October 24, 1898; decided November 22, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the second judicial department, entered December 7, 1895, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

This action was brought to recover damages for personal

injuries alleged to have been caused by the negligence of defendant as the plaintiff's employer.

The facts, so far as material, are stated in the opinion.

*Thomas S. Moore* for appellant. The complaint should have been dismissed at the close of plaintiff's case. (*McDugan* v. *N. Y. C. & H. R. R. R. Co.*, 10 Misc. Rep. 337; *Williams* v. *D., L. & W. R. R. Co.*, 116 N. Y. 628; *Wright* v. *N. Y. C. R. R. Co.*. 25 N. Y. 562; *Gibson* v. *E. Ry. Co.*, 63 N. Y. 449; *Deforest* v. *Jewett*, 88 N. Y. 264; *Sweeney* v. *B. & J. E. Co.*, 101 N. Y. 520; *Hickey* v. *Taaffe*, 105 N. Y. 26; *Buckley* v. *G. P. & R. M. Co.*, 113 N. Y. 540; *Crown* v. *Orr*, 140 N. Y. 450, 456; *Cullen* v. *Norton*, 126 N. Y. 1; *Mancuso* v. *C. C. Co.*, 87 Hun, 519; *Loughlin* v. *State*, 105 N. Y. 163; *Keenan* v. *N. Y., L. E. & W. R. R. Co.*, 145 N. Y. 196; *Sherman* v. *R. & S. R. R. Co.*, 17 N. Y. 153.) The court erred in charging the jury that "the duty of the master is to provide a safe place in which to perform the work of the employment." (*Harley* v. *B. C. M. Co.*, 142 N. Y. 34; *Mickee* v. *Wood M. M. Co.*, 77 Hun, 562; *Butler* v. *Townsend*, 126 N. Y. 105.)

*F. W. Catlin* for respondent. There was sufficient evidence of defendant's negligence to sustain the verdict. (*Szuchy* v. *H. C. & I. Co.*, 150 N. Y. 219; *Hazman* v. *H. L. & I. Co.*, 50 N. Y. 53; *Painton* v. *N. C. R. Co.*, 83 N. Y. 7; *Com. Bank of K.* v. *Pfeiffer*, 108 N. Y. 242; *Union P. R. R. Co.* v. *Jarvis*, 10 U. S. App. 439; *Byrne* v. *B. C. R. R. Co.*, 58 N. Y. S. R. 577; 27 N. Y. Supp. 126; *Bailey* v. *R., W. & O. R. R. Co.*, 139 N. Y. 302; *Buckley* v. *P. H. I. O. Co.*, 17 N. Y. S. R. 436; 117 N. Y. 645; *McCall* v. *Witherbee*, 21 Wkly. Dig. 530; 103 N. Y. 654; *Vanesse* v. *Catsburg, etc.*, 159 Penn. St. 403; *McGovern* v. *C. V. R. R. Co.*, 123 N. Y. 280; *Kranz* v. *L. I. R. Co.*, 123 N. Y. 1; *Stuber* v. *McEntee*, 142 N. Y. 204; *Mickee* v. *Wood M. M. Co.*, 70 Hun, 456; *Holden* v. *F. R. R. Co.*, 129 Mass. 268; *Mulcairns* v. *City*, 67 Wis. 24, 35, 36; 5 S. & R. on Neg. § 203; *Burns* v.

*Matthews*, 146 N. Y. 386.)   Plaintiff was not guilty of contributory negligence as matter of law, nor did he assume the risks.   (*Doyl* v. *Baird*, 6 N. Y. Supp. 517.)   The charge of the trial judge was correct.   (*Sciolina* v. *E. P. Co.*, 7 App. Div. 417;  *Adams* v. *I. Nat. Bank*, 116 N. Y. 606;  *Wells* v. *Higgins*, 132 N. Y. 459, 464;  *Wyman* v. *Hart*, 12 How. Pr. 122.)

PARKER, Ch. J.   We think this judgment must be reversed, because it does not appear that the injury sustained by the plaintiff was due in any degree whatever to the omission of the defendant to perform any duty which, as master, he owed to his servant, this plaintiff.   The learned trial judge submitted the case to the jury upon the theory that there was some evidence tending to show that the defendant omitted to perform the duty the law charges upon all masters of furnishing a reasonably safe place in which the servant may work.   But an examination of the evidence will show that it furnishes no support whatever to this view.   Let us examine it.   In July, 1894, the defendant, in pursuance of a contract with the city of New York, was engaged in cutting down a ledge of rock on the bank of the Harlem river, work necessary to be done in order to construct the speedway.   At the time the defendant commenced the work this ledge of rock rose about one hundred feet above the surface of the water, and the face of the rock was nearly at right angles with the river.   The means employed in removing this rock was drilling and blasting.   The work was commenced by drilling with steam drills a large number of holes twenty feet deep on the top of the bank, and about eight or ten feet from the edge.   In these holes an explosive was placed, and the explosion resulted in shattering the rock and throwing out most of the fragments for a space of about thirty feet in length, twenty feet in depth, and from eight to ten feet in width.   The place thus cleared out was called a bench. Upon the seat of the bench after an explosion was left necessarily a large amount of stone, both fine and coarse, and about its sides and back would sometimes be left fragments of stone

that had been partially but not wholly torn from their resting
places by the force of the explosion.   In order to provide a
reasonably safe and convenient place for the steam drillers to
prosecute their work requisite to the blasting out of a bench
still lower down, it became necessary to clean from off the
bench created by the last blast the stone and dirt that had settled
there after the explosion, and men were required to climb up on
the bench and so clean it off.   Down at the bottom of the cliff
there were some men called hand-drillers, who were at work
making openings for explosives at about the height above the
river required for the foundation of the speedway.   That was
the principal work of this defendant, but he was also required,
when called upon by the foreman, to do the work of a mucker,
a name given to those who shoveled off the stone and dirt that
accumulated on the benches after explosions.   On the 19th
day of July, 1894, the plaintiff was directed by one Bundy,
who was the foreman in charge of the men, to go up on the
bench, which was then about forty feet above the roadway, in
company with Washington and Davis, for the purpose of
cleaning it off.   While the plaintiff was thus engaged a large
stone fell out of the wall, at a place six or seven feet above
the seat of the bench, struck plaintiff's leg and crushed it so
badly that it had to be amputated between the knee and the
ankle.

While there was evidence tending to show that the plaintiff
was actually prying out smaller stones that constituted the
foundation of the stone that fell upon him, and thus it was
caused to fall by his own act, there was also evidence pointing
in the other direction, and, therefore, we must assume that it
fell without being touched by the plaintiff, and that the cause
of the accident was a blast that took place some two or three
days previously.   At that time the master was not present ; a
man named Ryan was the superintendent of the whole work,
and Wilbert Bundy was the foreman in charge at this point.
Now let us see what are the master's duties.   He must pro-
vide a reasonably safe place in which the servant may prose-
cute his labors — not a " safe place," as the learned court said

in charging the jury.   The law is reasonable and does not
require impossibilities, and work along any part of the face
of this precipice of óne hundred feet in height could not in
the very nature of things be in a safe place.   In addition to
the dangers of the situation, there were those incident to the
use of high explosives, which were required to throw out such
large quantities of rock.   The master could not provide a
place other than the precipice itself in which to prosecute this
work; the next step was to furnish proper appliances, and it
is conceded that he did so; his third duty was to employ com-
petent and skillful men to work with this plaintiff in the dis-
charge of the hazardous employment in which all were engaged,
and the competency of the other servants of the defendant is
not at all questioned.   The rules referred to are those that
point out the duties a master owes to a servant such as this
plaintiff was, and we readily see it has not been made to
appear that the defendant failed to perform any duty.   But
the learned trial court was of the opinion that the duty of
the defendant to provide a reasonably safe place for his work-
men was continuous, so that in every change in the surface of
this great ledge of rock, whether occasioned by blasting out a
bench or shoveling off the crushed and broken stones, the
master's duty of providing a reasonably safe place for his
workmen at once attached.   But although the particular act
of omission or commission causing the injury may be that of
a fellow-servant, for whose negligent acts the master is not
responsible in law, as the master's duty cannot be delegated,
the respondent contends that the rule is in effect overborne in
such a case as this.   But it has not been understood to be the
rule in this state that in the performance of work of this
character the master, after making the place in the first
instance reasonably safe for the prosecution of the work, has
any duty to perform other than in the furnishing of safe appli-
ances and the employment of competent and skillful employees.
Under the guise of an application of the rule requiring a
master to furnish a reasonably safe place for his servants to
work in, other attempts before this have been made to deprive

a defendant of the benefit of another equally well-settled and just rule of the law of negligence, that a party shall not be held responsible to a servant for an injury occasioned by the neglect of a competent co-employee. Such an attempt was made in the case of *Armour* v. *Hahn* (111 U. S. 313); but it was there held that the obligation of the master to provide a reasonably safe place and structure for his servants to work upon does not oblige him to keep the building they are engaged in erecting in a safe condition at every moment of their work so far as its safety depends on the due performance of that work by them and their fellow-servants. The facts of that case were briefly these: Carpenters in charge of a foreman, and brick-layers all employed by the owner through his superintendent, were engaged in the erection of a building with a cornice supported by sticks of timber passing through the wall (which was thirteen inches thick) projecting sixteen inches, to be bricked up at the sides. When the wall had been bricked on a level with, but not yet over the timbers, the foreman of the carpenters directed two of them to take a joist for the edge of the cornice and to push it out to the ends of the projecting timbers. In so arranging the joist a carpenter stepped on the projecting part of one of the timbers which tipped over, whereby he fell and was hurt; a recovery was not allowed.

In *Loughlin* v. *State of New York* (105 N. Y. 159) the plaintiff, an employee of the state, was engaged with others under the direction of W., the captain of the state boat, in taking clay from the bank and loading it on the boat. W. so loosened the bank of overhanging earth that it fell upon the plaintiff while he was digging under it and injured him. It was held that the cause of the injury was the negligence of the captain, who was a co-servant, and, therefore, the state was not liable.

In *Hussey* v. *Coger* (112 N. Y. 614) the plaintiff's intestate, who was in the service of the defendant, although actually employed by the superintendent, was engaged in the making of repairs in the hold of a vessel. It became necessary to uncover a hatchway in the main deck, and the superintendent

directed the foreman to have it done; as the hatches were heavy two men were sent up to do the work and a third approached with the intention of assisting, but the superintendent, without waiting for him, directed one of the employees to remove the hatchway; he lifted one end and pulled the other from its resting place, when it was wrested from his hands, striking the plaintiff; the holding was that the master had not omitted the performance of any duty; that he had provided a skillful and competent man to superintend the work, a sufficient force with all necessary means and appliances to perform it, and a safe place free from inherent dangers in which to carry it on, and that he was not chargeable with the consequences if the place for work was made dangerous only by the carelessness and neglect of a fellow-servant or for the negligent manner in which the servants used the tools and materials furnished them for their work. This case is clearly within the decision of this court in the case of *Cullen* v. *Norton* (126 N. Y. 1). In that case the place of employment was a quarry under ground, from which rock was being taken to be used in the manufacture of cement. This rock was excavated by means of blasting, in the performance of which work holes were drilled in the rock and subsequently explosives inserted. After a blast it was found by the foreman in charge that one of the charges had not exploded; a further examination showed that the fuse was unconsumed, but he omitted to remove it and put the plaintiff's intestate at work drilling about thirty feet distant. Shortly afterwards the fuse caught fire and the charge exploded, causing C.'s death. There the question was presented and decided whether the master was chargeable with neglect of duty, in that the quarry was not a safe place to work in at the moment of the explosion. It was held that the defendant discharged his duty when he furnished a quarry which was at that time as safe a place to work in as quarries generally are, and certainly free from the dangerous substance which subsequently caused the accident; and this court also held that, having performed this

33

duty and selected a competent and skillful foreman and co-employees, the master's duty had been performed, and he was not liable for the manner in which the persons so employed should themselves perform their work. The court pointed out that the manner of performance of each of the various details of the work, by which, as a whole, it is conducted, rests necessarily upon the intelligence of the servants intrusted with it. Said the court: "It can't be that every time a blast was exploded and the men came back, the manner of their distribution for work was a duty of the master, and that the order of a foreman, mistakenly or negligently given, must be regarded as the order of the master in fulfilling a duty to furnish a safe place to work in."

So in this case the master furnished everything that he was obliged to, including competent employees and a skillful foreman, and if there was any negligence on the part of any one other than the plaintiff, it was that of the foreman in omitting to give the plaintiff notice to pry off the piece of rock that fell and hit him, instead of going to work directly under it; but in this omission he was not acting in place of the master; it was an ordinary detail of the work in which the plaintiff, the foreman and the others were engaged. They were to clean off this bench and make it a safe and convenient place for the steam-drillers to work, and it necessarily included the removal from the sidewalls of loosened fragments of rock that threatened to fall; but this the plaintiff apparently did not think of doing, nor did it occur to the foreman that there was danger, or, if it did, he omitted to speak about it. In that omission he may have been negligent, but it was the negligence of a fellow-servant, although in the performance of the work he was the plaintiff's foreman, for it was not the master's duty to tell the plaintiff to take down threatening fragments of stone, made dangerous by the plaintiff or his co-employees, before working under them, or to take them down for him. It formed one of the many details of the work incident to the removal of this rocky cliff, which the defendant had a right to intrust to a skillful foreman and

competent workmen, after providing them with the necessary and proper machinery, appliances and tools.

The cases to which we have referred have been lately approved in *McCampbell* v. *C. S. Co.* (144 N. Y. 552) and *Kimmer* v. *Weber* (151 N. Y. 417–422).

The judgment should be reversed and a new trial granted, costs to abide event.

All concur, except O'BRIEN, BARTLETT and VANN, JJ., dissenting.

Judgment reversed, etc.