(86 App. Div. 101.)

PEET v. H. REMINGTON & SON PULP & PAPER CO.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1903.)

1 MASTER AND SERVANT—UNSAFE PLACE—NEGLIGENCE—FELLOW SERVANTS.

A master is not liable to a servant on the ground of omission to provide the latter a safe place to work, where the place was reasonably safe, and was made dangerous solely by the failure of a fellow servant to close a hole in the floor above, which it was his duty to do when he had finished using it.

2. SAME—INSPECTION.

Where a servant employed in a mill is injured by the falling of a block of wood through a hole in the floor above, the master cannot be charged because of failure to discover that the hole had been left uncovered, when inspection was made shortly before the accident, and the hole was afterwards left open by a fellow servant.

Appeal from Trial Term, Jefferson County.

Action by Charles A. Peet against the H. Remington & Son Pulp & Paper Company. From a judgment for plaintiff, and an order denying its motion for a new trial, defendant appeals. Reversed.

The defendant is a domestic corporation engaged in the manufacture of paper from wood pulp at its mill, which is located at Black River in the county of Jefferson in this state. The mill is a stone building one story in height, 150 feet in length, and 50 feet in width. The interior is divided into three parts—a saw room, a grinder room, and a machine room. The grinder room is located upon the north side of the mill, and in a pit excavated from the rock to the depth of 9½ feet below the floor of the saw room. The pulp manufactured at this mill is made from spruce and balsam timber, which is

first carried to the saw room, where it is sawed into blocks 16 inches to 2 feet in length. When the wood is sawed into proper lengths, it is thrown into a receptacle at the end of the grinder room next the saw room, holding some five or six cords of 16-inch wood, and from this receptacle it is taken to the grinding machines and ground to a pulp. At the end of the saw room, and next to the grinding room, there are double doors, each of which is about 2 feet in width and 10 feet in height. These doors open into the saw room, and, when closed, are fastened with a clasp and staple. Just inside the doors there is an opening in the floor a foot in width and 4 feet long, which is ordinarily covered with a plank about a foot wide and 5 or 6 feet in length, and it is through these two openings that wood is thrown from the saw room into the grinding room. The mill ran day and night, and it was the duty of the men engaged on the grinders to carry the wood from the receptacle into which it had been thrown to the machines, and, when the supply was exhausted, to go above and throw down more. The plaintiff, Peet, entered the defendant's service about the 15th of April, 1899, and commenced work in what is called the "wet room, tending screens," but in about six months he was, at his own request, transferred to the grinder room, where he continued to work until the 14th day of July, 1900. About the 19th day of July, the mill being short of help, Peet, at the request of the defendant's superintendent, resumed work in the grinding room. He entered upon this service at 6 o'clock in the evening, and continued to work until about midnight, when, as he was stooping over in the bin to pick up a stick of wood, a block some 12 inches in diameter came down from above, struck him on the back, and injured him so seriously that paraplegia ensued, which ultimately completely disabled him. There was no other person present at the time the plaintiff received his injury, and it does not satisfactorily appear just where the block of wood which struck him came from, but he testified that after receiving his injury he went up into the saw room to throw down more wood, and then discovered that the doors were open, from which circumstance the jury were asked to infer that the block came from that room. At the close of the plaintiff's case a motion for a nonsuit was made by the defendant's counsel, which the court denied, but in doing so took occasion to say that it regarded the case as a "marginal" one, and one concerning which it entertained serious doubt. To the refusal to nonsuit an exception was duly taken, and the motion was renewed when the evidence was all in, with the same result as before, to which further ruling of the court another exception was likewise taken. The case was thereupon submitted to the jury, which after a lengthy deliberation rendered a verdict in favor of the plaintiff for $3,000, and from the judgment entered thereon, as well as from an order denying the defendant's motion for a new trial on the minutes, this appeal is brought. Subsequent to the entry of the judgment and order appealed from, the plaintiff in the action died, and Eliza L. Peet, as administratrix of his estate, was substituted as plaintiff and respondent, and the action has since been continued in her name.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Henry Purcell, for appellant.
John N. Carlisle, for respondent.

ADAMS, P. J. We think that the refusal to nonsuit constitutes error which requires a reversal of the judgment and order appealed from. The action is one of negligence; the particular act complained of, and the only one alleged in the plaintiff's complaint, being that the defendant, in its relation of master to the plaintiff, was unmindful of its duty, in that it omitted to provide the latter with a safe and proper place in which to perform the work required of him. A very careful examination of the voluminous record in the case fails to disclose any evidence which in our opinion will support a verdict based upon this

theory. Indeed, the learned trial court, in denying the defendant's motion for a nonsuit, took occasion to say that, "so far as the place where the plaintiff was injured is concerned, it was reasonably safe, and the master had done his full duty in that regard"; and subsequently, in submitting the case to the jury, this statement was reiterated in substantially the same language. The place itself certainly was a reasonably safe one. So far as the evidence discloses, there was nothing complex or hazardous about its construction, its condition, or its appurtenances. No one had ever been injured there before, and the plaintiff's witnesses Ostrander and Ashcraft testified that with the doors in the saw room closed, and the hole in the floor covered, it was impossible for a stick of wood to roll out into the grinding room. What, then, is there in the case which charges the defendant with liability for the accident which befell the respondent's intestate?

If we correctly apprehend the contention of the learned counsel for the respondent, and the theory upon which the case was finally submitted to the jury, it amounts to this: that, even conceding the "place" to have been a reasonably safe one in its original state, it was permitted to become unsafe through the failure of the defendant to close the doors leading into the saw room, or to take proper precautions to see that they were closed, while Peet was at work in the grinding room; but we hardly think this contention will find any support in the law relating to master and servant, as we understand it. It was testified by both of the witnesses to whom reference has just been made, and in this respect they were amply corroborated by other evidence in the case, that it was the business of the man who threw the wood down into the grinding room to open and close the door, and to uncover the hole in the floor, and replace the plank when he had finished his labors. This duty, therefore, was but a mere detail of the work, which belonged to the servant, and not necessarily ·to the master, to perform; and if, by reason solely of the former's omission to properly perform the same, the place where the respondent's intestate was obliged to work was made dangerous, the master was not chargeable. Hussey v. Coger, 112 N. Y. 614, 20 N. E. 556, 3 L. R. A. 559, 8 Am. St. Rep. 787; Smith v. Empire Transportation Co., 89 Hun, 588, 35 N. Y. Supp. 534; Foley v. Brooklyn Gas Light Co., 9 App. Div. 91, 41 N. Y. Supp. 66; Ludlow v. Groton Bridge & Mfg. Co., 11 Hun, 452, 42 N. Y. Supp. 343. Now, we think it satisfactorily appears in the present case that it was the respondent's own witness and co-employé, Ashcraft, who was responsible for the condition of things which changed the grinding room from a safe to an unsafe place, if any such change can be said to have occurred; for he testified that just before he quit work—that is, at about half past 5 or 6 o'clock on the night of the accident—he went up into the saw room and threw down enough wood to enable Peet to run three or four hours, and that, although it was his duty to close the doors, he did not remember whether he left them open or closed. So far as appears, this witness was the last person in the saw room prior to the accident, unless, as is stated by several of the defendant's witnesses, Peet himself went there during the night to replenish his wood pile; and the only inference fairly deducible from all the evidence in the case is that one of these two per-·

sons must have left the doors open.   Peet insisted that he did not go there until after he received his injury, and, as the jury appear to have accepted his statement as true, it must be assumed, we think, that the failure to close the doors was the negligence of Ashcraft, a fellow servant, and that consequently, within the rule to which we have adverted, no blame for such omission attaches to the master.   Any other assumption to account for the open doors would be founded upon conjecture merely, and would be without any probative evidence to sustain it.

But while little effort is made to account for the open doors upon any other reasonable theory, the rule of inspection is invoked, and it is claimed that if the defendant's superintendent, Shufty, had properly performed his duty, he would have discovered that the doors had been left open in time to have prevented the accident.   It is true that among the superintendent's duties was that of going through the mill between 4 and 6 o'clock every afternoon "to see that everything was all right," and he testified that on the day of the accident he performed this duty. He was unable to state just when he was in the saw room, but he does state that when there he saw that the doors were closed, and that the plank was in its proper place, and there is nothing in the case save the fact that the doors were open when the accident occurred to contradict him.   We think, therefore, that it cannot be asserted that there was any failure of the duty of inspection without extending the rule beyond reasonable limits, for it must be borne in mind that, if Ashcraft left the doors open, he did so just before the time for work in the saw room to cease; and, in view of the circumstances of this case, the nature of the duty omitted by Ashcraft, and the little reason there was to have anticipated any serious consequences to have resulted therefrom, we hardly think it will answer to place the respondent's right to recover upon the defendant's omission of its duty of inspection.   This duty is one which must be enforced in a reasonable manner, and, like the obligation of a master to provide a reasonably safe place for his servants to work in, it is one which does not require unceasing and impracticable performance.   Perry v. Rogers, 157 N. Y. 251, 51 N. E. 1021.

There are several exceptions to the charge of the learned court, and to its refusal to charge in compliance with the requests of the defendant's counsel, which in our judgment present very serious questions; but, inasmuch as we have reached the conclusion upon the merits that the verdict of the jury cannot stand, we do not deem it necessary to consider them more particularly.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide event, upon questions of law only, the facts having been examined and no error found therein.   All concur.