Margaret Bateman, Appellant, v. The New York Central and Hudson River Railroad Company, Respondent.

Master and Servant — Safety of Working Place. Where it appears that the plaintiff in an action of negligence sustained injuries from falling through a trap door not fitted with hinges, which was improperly replaced by her co-servants, and it is a fair inference from the evidence that such co-servants, who were working below the trap door, could not close it from below and bring it down to a level with the surrounding floor, for the reason that it was a very tight fit and required considerable force to drive it back into position, it is a question for the jury whether the accident was not likely to occur in the absence of hinges on the door, which would have held it firmly in place, so that it would have been either wide open and the aperture perfectly obvious, or practically closed, substantially covering the opening and immovable if stepped upon, and, therefore, whether the defendant, under the circumstances, had furnished a safe place in which the plaintiff was required to work.

*Bateman v. N. Y. C. & H. R. R. R. Co.*, 67 App. Div. 241, reversed.

(Argued March 2, 1904; decided March 15, 1904.)

Appeal from a judgment entered December 6, 1901, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, which reversed a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Theodore E. Hancock* for appellant. It was a question of fact for the jury to say whether the defendant furnished the plaintiff a reasonably safe place to work. (*Stringham* v. *Stewart*, 100 N. Y. 516; *Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 368; *Racine* v. *N. Y. C. & H. R. R. R. Co.*, 70 Hun, 454; *Stephens* v. *H. V. K. Co.*, 69 Hun, 375; *Tendrup* v. *Stevenson*, 51 Hun, 462; *Freeman* v. *G. F. P. Co.*, 39 N. Y. S. R. 621; *Eaton* v. *N. Y. C. & H. R. R. R. Co.*, 163 N. Y. 391.) The charge of the trial court upon the question of combined negligence was justified both as a matter of fact and

a matter of law.    (*Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95
N. Y. 546; *Stringham* v. *Stewart*, 100 N. Y. 516; *Anthony*
v. *Leeret*, 105 N. Y. 591.)

*A. H. Cowie* and *Frank Hiscock* for respondent. The trial
court erred in submitting the question of defendant's negli-
gence to the jury, and should have granted a nonsuit upon
the ground that there was no negligence upon the part of
defendant, and that plaintiff received her injuries through the
negligence of competent co-employees. (*Harley* v. *B. C.
Mfg. Co.*, 142 N. Y. 31; *Cullen* v. *Norton*, 126 N. Y. 1;
*Hogan* v. *Smith*, 125 N. Y. 774; *Perry* v. *Rogers*, 157 N. Y.
255; *Spillane* v. *Eastmans Co.*, 33 Misc. Rep. 643; *Russell*
v. *H. R. R. R. Co.*, 17 N. Y. 134; *Mele* v. *D. & H. Co.*, 39
N. Y. S. R. 153; *Judson* v. *Olean*, 116 N. Y. 655; *Mulligan* v.
*Ballon*, 73 App. Div. 486; *Hussey* v. *Coger*, 112 N. Y. 614;
*Filbert* v. *D. & H. Co.*, 121 N. Y. 207.)

BARTLETT, J. This is an action to recover damages for
alleged personal injuries. The jury found a verdict in favor
of the plaintiff for one thousand dollars and judgment was
duly entered thereon.

The Appellate Division states in its order on reversing this
judgment that it was upon questions of law only and that the
facts had been examined and no error found therein. It is,
therefore, incumbent on the plaintiff, appellant, to show that
there was no error of law justifying the reversal of the
judgment.

The plaintiff resides in the city of Syracuse, and at the
time of her injury, the 17th of November, 1898, was employed
by the defendant company as a cleaner in its freight office;
she had filled this position since the May previous. In the
floor of this office, outside of the desks and in the space for
the public, was a trap door located near the wall of the build-
ing. It was proved that beneath the floor of this office was
the heating plant, consisting of steam pipes and other appli-
ances. The trap door in question was to enable plumbers to

reach this plant when necessary to replace or repair the same. The space between the trap door and the ground was about three feet, the grade falling off toward the center of the building.

The manner of the construction and operation of the trap door has a controlling bearing on this case. The plaintiff swore a carpenter as an expert, who had examined the premises, and he testified in part as follows: " This trap door that was in the floor was 25 1/2 inches long and 22 1/2 inches wide. It is on the east side of the freight office. * * * The edge of the hole is one foot from the mop-board on that side of the office. It extends out from that 22 1/2 inches. The cover of this hole is made of the same material of which the floor is made. The boards are hard pine an inch and an eighth thick. There are nine boards making this cover — nine pieces. There is a batten nine inches wide on the underside; the boards are screwed or fastened to this batten. * * * Now the * * * floor is so made that it gives a bearing to each end of this little door of an inch and a half; and when the door is laid down in its place it is flush with the floor, smooth, so you walk over it. There are no hinges on it. * * * When down in its place properly * * * it is virtually a portion of the floor, and is a good tight fit. It fits flush with the floor. * * * If the door was in its proper position in the floor one would possibly pass it without noticing that there was a trap door there. * * * I saw them take it out. The man that took it out had to take a little screw driver and put it under this corner here to pry it up. Then when I was done with my measurements, laid it down, gave it a kick with my toe to knock it back into its place and it went down. * * * It fits in there very tight."

At the time of the accident plumbers were at work beneath the floor on the steam-heating apparatus and had opened the trap door in order to reach the place.

The plaintiff, at about half-past three o'clock in the afternoon, while engaged in her work, approached the south side of the office, near the location of the trap door. She thus

testifies in this connection : " I hadn't worked on that side of the office before. I worked on the other side. * * * I had never seen this trap door; didn't know of its existence. At the time I stepped on this door we were just finishing up to get through and the other woman came to me and she asked me if I was through and I said yes. I was just wiping the desk and went to reach up to wipe off the light, and just as I stepped around the end of the desk, I stepped on this loose piece of floor and it flew right up and struck me on the left knee, and when I saw the floor opening, I felt my feet going from under me, and I made a twist to swing around, not to fall in, and then I went with harder force against the edge of the floor, and went right down through, and the loose piece of floor was between me and the tight floor that was in the hole. This piece of flooring tipped up in the hole. Both of my legs didn't go into this hole; the right foot went down to my body and the other one, my knee, right in there. There was a radiator there. I struck against it when I was falling. * * * I remained in bed over three months steady. The doctor came sometimes twice a day and he came every day for over three months. I had three broken ribs. Then after I got up the knee that I bruised in the fall — when I got up my knee was sore, inflammation set in. I was so weak I couldn't do any work." The witness also testified that at the time of the trial her knee was still troubling her, and that she had never regained her normal condition of health.

The trial judge submitted this case to the jury in an exceedingly fair charge. He stated to them, in substance, that in an action based on negligence the plaintiff must show that the injury happened by reason of some negligence on the part of the defendant, without any negligence on the part of the plaintiff that has contributed in any degree to the result; that the duty was upon the defendant to furnish a reasonably safe place for its servants, of whom the plaintiff was one, for the discharge of the duties that they were employed to perform. He then told the jury, with considerable elaboration, that he proposed to submit to them the question whether the defend-

ant had, in view of the circumstances, discharged its full duty of furnishing a safe place for the plaintiff to work, the trap door having been constructed without hinges.

He said : " According to the evidence of Mr. Hunt this door, when it was fully in place, was apparently solid and tight. If so, the inference naturally would follow that at the time the plaintiff stepped upon it and it had tipped it had been removed to some extent from its original place, so that the tipping occurred, and the inference perhaps may be drawn (it is your duty to draw it if anybody does) that the plumbers, who were at work below upon this day, when they went down, instead of placing this trap door squarely over the hole, left it raised a little upon one side, so that there was occasion for the tipping. If those employees, those plumbers below, were negligent in the manner in which they left it, if they were careless, I say to you, for the purpose of this case, the defendant is not liable for their negligence ; and if their negligence was the sole and only cause of the accident, then the plaintiff could not recover. If, however, the defendant was also careless ; if it failed to furnish there a reasonably safe place ; if, by reason of this door being constructed as it was without any hinges (which, as it is claimed, was an important circumstance, and that, of course, is for you), but constructed as it was, and being there just as it was, for the purpose for which it was there placed, and with such a liability as may be shown here of its being used ; if the defendant failed to perform its duty, and, therefore, was careless, and such carelessness also contributed to the result, then the defendant would not be relieved, because the employees were also negligent." The plumbers in question were in the permanent employ of the defendant company.

The Appellate Division approved the charge of the trial judge, save in one particular, where it submitted to the jury the question whether the defendant had performed the duty resting upon it, of furnishing a reasonably safe place for plaintiff to work when discharging the duties of her employment. The learned court were of the opinion that this case falls

within the rule laid down in *Perry* v. *Rogers* (157 N. Y 251, 255), citing in that connection *Hussey* v. *Coger* (112 N. Y. 614); *Filbert* v. *D. & H. C. Co.* (121 N. Y. 207); *Hogan* v. *Smith* (125 N. Y. 774); *Geoghegan* v. *Atlas S. S. Co.* (146 N. Y. 369).

The rule laid down in these cases is the correct one, and has been strictly adhered to by this court.

We are constrained to differ with the court below as to the application of this rule in the present case. In *Perry* v. *Rogers* (*supra*) a very different situation was presented. The head note of that case states the facts as follows: "When the employer of competent workmen engaged in blasting down a ledge of rock, on the face of which they necessarily work, has provided them with the necessary and proper appliances and with a skillful foreman, the removal from a spot where a blast has been exploded of a threatening overhanging rock, made dangerous by the work, before undertaking to remove the blasted rock beneath, is an ordinary incidental detail, as to which the employer is not bound to direct a workman, but which may be properly left to the foreman; and if the foreman, on sending a workman to clear a blasted spot, omits to remove or to notify the workman to remove a threatening piece of rock before working directly under it, he is in that respect a fellow-servant; and if the piece falls and injures the workman, the negligence, if there is any except on the part of the workman himself, is that of the foreman as a fellow-servant, and does not constitute a breach of the employer's duty."

The Appellate Division quotes, in part, the following from the opinion of PARKER, Ch. J., in that case: "But it has not been understood to be the rule in this state that in the performance of work of this character the master, after making his place in the first instance reasonably safe for the prosecution of the work, has any duty to perform other than in the furnishing of safe appliances and the employment of competent and skillful employees."

The Appellate Division then says: "Tested by the rule as

thus declared, we fail to see how it can be said that the place in which the plaintiff was required to perform her work was unsafe in any sense for which the defendant was responsible. The cover for the trap was, beyond all question, so constructed as to withstand the greatest weight which under any conceivable circumstances would ever rest upon it, and when adjusted in the manner designed by the defendant it was not only flush with the floor, but it was a part of the floor, and just as firm and safe as any other part. Indeed, it appears that in such circumstances it was so firmly and closely fitted to the aperture for which it was constructed that it required some effort to remove it; and this being so, the conclusion is irresistible that but for the failure of the plumbers to replace the cover in the exact condition in which they found it, the plaintiff would have escaped the injury which subsequently resulted. It is possible that if the cover had been adjusted by means of hinges this particular accident would not have occurred ; but even assuming this to be so, it does not follow that the defendant's liability was established, for the fact still remains that with the means of adjustment which it had furnished, and which, so far as appears, had always theretofore proved sufficient, the place was both safe and suitable within the rule cited, and if so the verdict of the jury had nothing upon which to rest."

The learned Appellate Division in thus summing up the evidence has omitted, as it seems to us, the one controlling fact, which was a proper inference from the evidence, if the jury saw fit to draw it, that the plumbers from beneath could not close the trap door and bring it down to a level with the surrounding floor, for the reason that it was a very tight fit and required considerable force from above to drive it back into position. It was for the jury to say whether what did happen was not likely to occur, in the absence of hinges on the trap door, which would have held it firmly in place, so that it would have been either wide open and the aperture perfectly obvious, or practically closed, substantially covering the opening and immovable if stepped upon.

While there was no direct evidence as to the precise position of this trap door just prior to the accident, yet the plaintiff's testimony as to the manner in which she fell into the opening justified the jury in finding that the trap door was not placed squarely over the aperture, but was in a position which caused it to tip when she stepped upon it.

We are of opinion that it was an open question for the jury to answer, under all the circumstances, whether the defendant had furnished a safe place in which the plaintiff was required to work.

It follows that there was no question of law presented justifying the reversal of the judgment in plaintiff's favor.

The order and judgment of the Appellate Division should be reversed and the judgment of the trial court affirmed, with costs to plaintiff in all the courts.

O'BRIEN, HAIGHT, VANN, CULLEN and WERNER, JJ., concur; PARKER, Ch. J., absent.

Order and judgment reversed, etc.