(125 App. Div. 666.)

### EVANS v. S. PEARSON & SON, Inc.

(Supreme Court, Appellate Division, Second Department. April 24, 1908.)

1. MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—PROPER APPLIANCES.

Where material for lining a tunnel, as it is excavated, is carried on a flat car, on a downgrade, in the tunnel, with no brake or other device to stop the car, and no buffer or obstruction to prevent the car running into the pit, at the end of the tunnel, where men are at work, but the master relies entirely on the faithfulness of the two men in charge of the car and

their ability to prevent accidents, the master is negligent, though the appliances furnished by him are of a kind in general use among those engaged in the same business; he being required to furnish reasonably safe appliances.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 215–217.]

2. SAME—ASSUMPTION OF RISK.

By express provision of Laws 1902, p. 1750, c. 600, § 3, the necessary risks which the employé assumes are only those remaining after the employer has exercised due care in providing for his safety.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 544–549.]

Woodward and Jenks, JJ., dissenting.

Appeal from Trial Term, Kings County.

Action by Julia Evans, administratrix of Albert Maurice Evans, deceased, against S. Pearson & Son, Incorporated, for death of plaintiff's intestate. From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals. Affirmed.

Argued before WOODWARD, JENKS, HOOKER, RICH, and MILLER, JJ.

Hugh A. Bayne (Arthur C. Patterson, on the brief), for appellant.
Frank F. Davis (Raymond D. Thurber, on the brief), for respondent.

RICH, J. The plaintiff's intestate was killed while engaged upon the construction of the iron work of the Pennsylvania tunnel under the East river. As fast as room was made by excavation, the construction of the tunnel tube, which was about 22 feet in diameter, was taken up. The work of boring and lining the tube where the accident happened had progressed about 500 feet from the entrance shaft on the Manhattan side of the river. The accident occurred while Evans was working at the end of the tube furthest from the shaft, where he and others were lining the newly excavated portion with its cast-iron lining. The lining consisted of cast-iron plates, each weighing about 2,100 pounds, which, when fitted together end to end, made a ring of the tube. The plates were loaded upon a flat car at the shaft and propelled upon a temporary track laid upon the bottom of the completed portion of the tube to a point about 6 or 7 feet from the end of the tunnel. In this 6 or 7 foot space was a pit of that width, the bottom of which was 3 feet below the level of the rails. From the shaft to the end of the track at the pit there was a descending grade of 1½ per cent. The car was usually propelled by two men. It was provided with no brake or other device to stop it, and no buffer or obstruction of any kind was furnished to prevent its running into the pit. The defendant depended entirely upon the men who started the car to push or pull it as occasion required. At the time of the accident it was started by one man, who jumped upon it to ride after the car had obtained some momentum, but who jumped off again at the command of his foreman and let the car run on down alone, off the end of the rails, into the pit, causing the ponderous plate to fall upon the plaintiff's intestate, inflicting such serious injuries that he died as the result thereof.

In the operation of this car the master relied entirely upon the faith-

fulness of the two men in charge and their ability to prevent accidents. They were liable to fail, as they did, in the performance of their duties, which exposed the men employed in the pit to serious danger, and this ought to have been anticipated. The master could not provide a safe place to do the work in which the deceased was engaged; but he could furnish proper appliances, and it was his duty to do so. Perry v. Rogers, 157 N. Y. 255, 51 N. E. 1021. Evidence was given tending to show that the appliances were of the type approved and in use among other contractors, from which it is argued by the learned counsel for the appellant that the appliances furnished by defendant "were of a kind in general use among those engaged in the same business," and were therefore reasonably safe. I cannot concur in this view. The carelessness of defendant's neighbors is no excuse for its negligence. It is true that the defendant was not required to provide the best devices obtainable, but it was required to furnish such as were reasonably safe; and, because others failed to do this, it cannot plead their failure as an excuse for its negligence. If a buffer was not feasible, there are many devices that ought to have occurred to the person in charge of defendant's work that would have prevented the car from running off the end of the track. There is sufficient evidence to sustain the finding that defendant was negligent and that such negligence was the proximate cause of the accident and consequent injury.

The exceptions taken by appellant have been examined, and our attention is called to no one which would justify a reversal of the judgment. It was for the jury to pass upon the question of contributory negligence on the part of the deceased. He is presumed to have assented to the necessary risks of his employment only, after the employer has exercised due care in providing for his safety. Section 3, c. 600, p. 1750, Laws 1902. This, as we have seen, the defendant failed to do.

The judgment and order must be affirmed, with costs. All concur, except WOODWARD and JENKS, JJ., who dissent.