ELGIE ALLEN, Respondent, *v.* OLD DOMINION STEAMSHIP COMPANY, Appellant.

First Department, July 6, 1925.

**Ships and shipping — action by longshoreman to recover for injuries suffered when he fell into hold of vessel — through negligence of fellow-servants hatch cover support was removed and as plaintiff stepped onto cover it tipped up and he fell — defendant is not liable on theory that it did not furnish reasonably safe place to work.**

The defendant is not liable for injuries suffered by the plaintiff, a longshoreman, which were caused by his falling into the hold of a ship, since it appears that he was directed by a foreman to assist in removing a tarpaulin from a hatch cover, one of the supports of which had been removed by his fellow-servants, and that as he stepped onto the hatch cover it tipped up and he fell into the hold of the ship.

The defendant cannot be held liable on the theory that it failed to furnish a reasonably safe place for the plaintiff to carry on the work, for that rule does not apply where a safe place was furnished, but during the performance of the work it has become momentarily unsafe through the acts of fellow-servants or employees, through no fault of the master.

FINCH, J., dissents, with opinion.

APPEAL by the defendant, Old Dominion Steamship Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 24th day of December, 1923, upon the verdict of a jury for $8,000, and also from an order entered in said clerk's office on the 17th day of December, 1923, denying defendant's motion for a new trial made upon the minutes.

*Bertrand L. Pettigrew* [*Walter L. Glenney* of counsel], for the appellant.

*Abraham Oberstein* [*Vine H. Smith* of counsel], for the respondent.

MARTIN, J.:

On April 22, 1921, the plaintiff was a member of a gang of ten longshoremen, six of whom were known as the hold gang. The work of these six was to arrange the hatch covers, to move the cargo in the hold and to attach it to the fall. The other four men were known as the deck gang and their duties were to arrange the rigging, to operate the winches and to give signals. All ten were under the direction of a foreman named Hundley.

A chief stevedore named Bradley had entire charge of unloading the ship. He was back and forth between the dock and the ship as the work progressed. A head stevedore named Toney and an assistant named Albright were also over Hundley. They were in

and around the ship while work was proceeding, going from one hatch to another.

On the day of the accident a vessel was being unloaded at a dock and plaintiff was working at hatch No. 5, near the stern of the vessel. This hatch was about twenty-seven feet long and sixteen feet wide and was covered with three sets of hatch covers about eight or nine feet in length and two feet in width. Across it were placed two crossbacks made of iron, dividing it into three equal sections. Across the middle of each of these three subdivisions of the hatch and parallel with the crossbacks were placed other iron beams of a lighter construction, known as blinders. The hatch covers, which ran fore and aft, rested upon these beams so that the ends of the covers were supported by the crossbacks. The blinders were underneath the middle of each set of covers.

In preparing the hatch for unloading on the day of the accident, the tarpaulin cover was rolled back toward the bow so as to uncover two aft sets of hatch covers. Then these two sets of hatch covers were removed and also one of the crossbacks and the two blinders. This left covering this hatch the forward set of hatch covers, supported by a crossback at one end and by the hatch coaming at the other, with a blinder beam underneath the center of the covers. This work was done by the gang of which plaintiff was a member, preparatory to unloading the cargo.

The unloading of the cargo consisted of removing crates of fruit, which work had been carried on by the use of an up-and-down fall and a Burton fall. The two booms were fixed in position, one over the hatch and the other over the dock. During the morning, the method of work had been to raise the draft out of the hold with the up-and-down fall and then to attach the Burton fall, swinging the load over to the dock. This required two signalmen. The plaintiff stood by the hatch and gave signals to the up-and-down winchman. A fellow-employee named Watts stood by the rail of the ship and gave signals to the Burton winchman. Later in the day the foreman directed that the two falls be shackled together, thus making it unnecessary to have two signalmen, whereupon the plaintiff was sent to the dock to there assist in removing the crates.

It appeared from his testimony that the up-and-down boom was in a fixed position; and it was customary to have the draft come to rest at a point directly below the center of the hatch before the signal was given to raise it. The load should, therefore, if the work were properly done, come up through the open hatch in the same position each time. About three o'clock in the afternoon a bundle of crates was so handled as to swing and catch under the crossback

supporting the forward set of hatch covers, which had been left in position. In this manner the crossback was pulled out, so that it fell into the hold. The hatch cover, however, remained in position by reason of being supported at one end by the hatch coaming and in the middle by the blinder beam.

When this occurred the plaintiff was down on the dock. Immediately upon the crossback being pulled out, the foreman, Hundley, was summoned, and set the men to work preparing to remove the hatch cover. The tarpaulin had first to be removed.

The plaintiff asserts that the foreman, Hundley, came to the rail of the ship, which was about twenty feet above the dock, and said to the plaintiff: "Allen, come up here and get up on the hatches and give Mr. Watts a hand to pull the tarpaulin off." Thereupon the plaintiff, after putting away his hand truck, walked back about fifty feet and came up over the rail of the ship to the deck, at a point about twenty feet from the hatch. He passed one of the winchmen and went to where Watts was standing on the hatch with one foot on the coaming and the other on the covers, engaged in pulling the tarpaulin. Watts had his back toward the plaintiff. The plaintiff also observed the foreman, Hundley, on the opposite side of the hatch standing on the deck, also with his back toward him, bending over and working at something.

The plaintiff without waiting for any instruction and without even making his presence known, stepped up on the hatch cover for the purpose, as he stated, of assisting Watts in rolling back the tarpaulin. As he stepped on the cover it tipped and he fell and was injured. The plaintiff seeks to hold the defendant liable for the injuries thus received.

In *Kreigh* v. *Westinghouse, Church, Kerr & Co.* (214 U. S. 249, 255) the United States Supreme Court said: " The duty of the master to use reasonable diligence in providing a safe place for the men in his employ to work in and to carry on the business of the master for which they are engaged has been so frequently applied in this Court, and is now so thoroughly settled, as to require but little reference to the cases in which the doctrine has been declared. * * *

" But while this duty is imposed upon the master, and he cannot delegate it to another and escape liability on his part, nevertheless the master is not held responsible for injuries resulting from the place becoming unsafe through the negligence of the workmen in the manner of carrying on the work, where he, the master, has discharged his primary duty of providing a reasonably safe appliance and place for his employés to carry on the work, nor is he obliged to keep the place safe at every moment, so far as such safety depends

on the due performance of the work by the servant and his fellow-workmen. (*Armour* v. *Hahn,* 111 U. S. 313; *Perry* v. *Rogers,* 157 N. Y. 251.)    * * *

" If the negligence of the master in failing to provide and maintain a safe place to work contributed to the injury received by the plaintiff the master would be liable, notwithstanding the concurring negligence of those performing the work."

The cases of *Grand Trunk R. Co.* v. *Cummings* (106 U. S. 700) and *Deserant* v. *Cerillos Coal Railroad Co.* (178 id. 409) are cited as authority for this latter proposition.

In the case of *Perry* v. *Rogers* (157 N. Y. 251, 253) PARKER, Ch. J., writing for the Court of Appeals said: " We think this judgment must be reversed, because it does not appear that the injury sustained by the plaintiff was due in any degree whatever to the omission of the defendant to perform any duty which, as master, he owed to his servant, this plaintiff. The learned trial judge submitted the case to the jury upon the theory that there was some evidence tending to show that the defendant omitted to perform the duty the law charges upon all masters of furnishing a reasonably safe place in which the servant may work."

It appears to be the law that if a safe place was furnished and, during the performance of the work, it has become momentarily unsafe, through acts of fellow-servants or employees through no fault of the master, he is not liable for a resulting accident.

We believe this to be such a case and that the master is not liable for the negligence of the employees in permitting the place to become unsafe during the performance of the work.

The judgment and order should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., and BURR, J., concur; MERRELL, J., concurs in result; FINCH, J., dissents.

FINCH, J. (dissenting):

I dissent. The verdict of the jury established the truth of the contention of the plaintiff that the foreman Hundley, came over to the rail of the ship, which was about twenty feet above the dock, and said to the plaintiff: " Allen, come up here and get up on the hatches and give Mr. Watts a hand to pull the tarpaulin off." Thereupon the plaintiff did just as he was told to do. The plaintiff did not need to wait for further instructions. Those he had were complete. He came over the rail of the ship and stepped up on the hatch cover for the purpose of rolling back the tarpaulin. There had been a change in the hatch cover since the plaintiff

38

had stood by the hatch in the morning and given signals, so that the place had become what amounted to a concealed trap, so far as the plaintiff was concerned. Whether when Hundley, the fore-man, gave the directions to the plaintiff to step up on the hatch cover and remove the tarpaulin, Hundley was a fellow-servant with the plaintiff, depends upon whether it can be said that the risk which the plaintiff took was such as was incident to his employment or such as was as open and obvious to the plaintiff as to the defendant. In *Kennedy* v. *Cunard Steamship Company, Ltd.* (197 App. Div. 459; affd., 235 N. Y. 604), where a hatch cover was closed before the plaintiff had come up from the hold, it was held that the foreman in closing down the hatch cover upon the plaintiff was the *alter ego* of the defendant and was not a fellow-servant. This court, through PAGE, J., said:

" It was a duty that the master owed to the employees, to take reasonable precautions to see that all the men had come up from the hold and not to close down the hatches until all the men had a reasonable opportunity to reach the upper deck. This was a duty that the master could discharge through another; but it was the master's duty that the other was performing, and for a failure to discharge it the master was liable. (*Corcoran* v. *Holbrook*, 59 N. Y. 517; *McGovern* v. *Central Vermont R. R. Co.*, 123 id. 280, 288; *Eastland* v. *Clarke*, 165 id. 420, 429.) The foreman in this case directed the work in the three aft hatches; the men took their orders from him and applied to him for tackle and other appliances used in their work; it was he who gave the orders to close the hatches. He was not a fellow-servant but was the *alter ego* of the defendant. The plaintiff made a *prima facie* case.

" Whether the plaintiff, placed in the situation that he was by the closing of the hatch, and failing to get any response to his out-cries, was chargeable with contributory negligence in going forward in the manner he did was clearly a question of fact for the jury. The plaintiff did not assume the risk. ' It is now the settled law of this State that the risks which a servant assumes are either such as are incident to his employment, after the master has dis-charged his duty of reasonable care to prevent them, or such as are quite as open and obvious to the servant as the master.' (*Eastland* v. *Clarke, supra*, 427.) The plaintiff was not employed to work in the ship in the darkness. The risk of falling into the open hatch in the daytime, when engaged in the work, he assumed. But the risk of falling into the hatch, when all light had been cut off by the master's negligent act, he did not assume."

In *McGovern* v. *Central Vermont R. R. Co.* (*supra*) the decedent was directed by the superintendent to enter a grain bin from a trap-

door in the bottom. The court there held that the danger did not arise out of the ordinary prosecution of the work and that, in ordering the decedent to occupy a place of danger, the superintendent was the *alter ego* of the master. So, in the case at bar, it cannot be said that the risk of being directed to work upon a hatch cover known to the foreman to be so unsafe as to precipitate into the hold any one stepping upon it, was an incident of the employment or a detail of the work of the plaintiff, or that the danger was as open and obvious to the plaintiff as it was to the foreman as the representative of the master. It was the duty of the defendant to furnish safe hatch covers for the men to walk on and work on, and when the hatch cover became unsafe to the knowledge of the foreman, the knowledge of the foreman was the knowledge of the master, and the master was bound to prevent the men from going upon the unsafe hatch cover until the dangerous condition had been corrected and the place restored to a condition of safety. It thus became a question of fact for the jury whether under all the circumstances the defendant had discharged its duty.

When the plaintiff disclaimed on the trial any liability because of the negligence of Hundley, the foreman, this obviously had reference to the acts of Hundley, not as the representative of the master, but to Hundley as a fellow-servant. The objection referred to is the only one relied on by this court for a reversal and dismissal of the complaint.

The remaining objections urged were not sufficient to require the setting aside of the judgment. (*Kennedy* v. *Cunard Steamship Company, Ltd.*, 235 N. Y. 604.)

Judgment and order reversed, with costs, and the complaint dismissed, with costs.