(Supreme Court, Appellate Division, Second Department. July 1, 1899.)

1. COLLISION BETWEEN STREET CARS—CONTRIBUTORY NEGLIGENCE OF MOTORMAN.

> Under a rule of defendant, a street-railway company, if a car going east after starting from the station was found to be defective it was to be brought back to the station over the west-bound track. About 5 o'clock on a morning that was so foggy that a car could not be seen more than 15 or 20 feet distant, a car going east was started on the east-bound track, and after it had gone about a half of a mile the motorman found it had no fender; and, instead of returning on the east-bound track, he proceeded two miles to a switch, and returned over the west-bound track. About 20 minutes after 5, another car, with a conductor and a motorman, was started from the station, going east, over the west-bound track. As to whether this was by order of the train dispatcher, the evidence was conflicting. Both the conductor and the motorman knew of the rule stated. The car was proceeding at the rate of 4 miles an hour, the motorman ringing the bell continually; and when it had gone about 2 miles he saw the headlight of the returning car about 15 feet in front of him, and when too late to prevent a collision by which he was injured. Held, that the proximate cause of the accident was the negligence of the conductor and motorman in taking out the car on the wrong track on a densely foggy morning, and that the company was not liable.

2. CONDUCTOR AND MOTORMAN FELLOW SERVANTS.

> The conductor and motorman on an electric car are fellow servants, and the negligence of the former is imputable to the latter.

> Bartlett and Woodward, JJ., dissenting.

59 N.Y.S.—15

Appeal from special term, Kings county.

Action by John Savage against the Nassau Electric Railroad Company for personal injuries. From a judgment of the supreme court entered upon a decision dismissing the complaint and granting a nonsuit, plaintiff appeals. Affirmed.

The following is the opinion of the court below (HIRSCHBERG, J.):

Assuming that Jerry ordered the plaintiff to take the car west on the eastbound track, it is evident that he followed such instruction with full knowledge of the risks involved. It was a foggy morning, and he was traveling on the wrong track. He necessarily incurred the risk of running into wagons, and into any car which might be approaching the depot upon the track he was using. Neither he nor the starter knew that another motorman had taken out a car without a fender, and was on his way back to get one. The plaintiff, however, admits that he knew the rule of the company in this regard, and knew that, if any motorman found his car defective in any way, it would be his duty to return it to the depot, and to use the east-bound track for that purpose. The accident complained of was a collision between the plaintiff's car and the car in charge of such a motorman, who had negligently left the station without a fender, and who was returning to get one. Assuming that Jerry was the company's alter ego, the case is distinguishable from those of which Sheehan v. Railroad Co., 91 N. Y. 332, and Hankins v. Railroad Co., 142 N. Y. 416, 37 N. E. 466, are examples. In that class of cases the train dispatcher is engaged in the performance of the master's duty, and the accident occurs because through him the master negligently orders two trains to approach each other on the same track. If Jerry knew that the negligent motorman was returning for a fender, and nevertheless ordered the plaintiff to take his car westward on the same track, intending, but negligently failing, to convey an order to the former which would avoid a collision, there would be an analogy with the cases cited. As it was, there was no risk involved, but what was as well known to the plaintiff as to the company. The order was equivalent to the order to "wild-cat generally," issued on steam railroads quite commonly, and under which the engineer is expected to look out for himself. The motion for a nonsuit is granted, and on the verdict of the jury the appellate court can direct judgment for the plaintiff, if I am in error, without a new trial. Ordered accordingly.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Charles J. Patterson, for appellant.
John F. Brennan, for respondent.

GOODRICH, P. J. The plaintiff was a motorman in the employ of the defendant on May 14, 1897, when he was injured by a collision between two of its cars proceeding in opposite directions on the same track. The defendant was operating a double-track street railroad line between Canarsie and Broadway ferry, in the borough of Brooklyn, and it was upon this line that the collision occurred. A car was started from Canarsie, on the east-bound track, at 5 o'clock on the morning of the accident, with one Stutter as motorman. The weather was so densely foggy that a car could not be seen at a distance of more than 15 or 20 feet. There was a general rule of the company that whenever a conductor or motorman, after starting, found that his car was defective, he was to bring it back to the station, in order that the defect might be remedied, and to bring it back on the right-hand track. Stutter and the plaintiff knew this rule. When the car had gone half a mile, Stutter discovered that it had no fender, and, instead

of returning upon the east-bound track, he proceeded about two miles, to a switch on Rogers avenue, where he switched over to the west-bound track, and proceeded towards Canarsie.   Meanwhile another car was to start from Canarsie at 10 minutes past 5, and Maher, the car dispatcher, ordered one Davis, as conductor, and the plaintiff, as motorman, to take out a car standing on the west-bound track.   Apparently the reason for selecting this car and giving this order was that an open car was wanted, and that there was a string of cars on the east-bound track, of which several of the outer ones were closed cars.   Moreover, there was no switch or other means by which a middle car could be taken out from among those on the east-bound track. Davis and the plaintiff went to the selected car, and, finding that it needed sweeping, went back to Maher to report that fact.   This consumed about 10 minutes, so that the car was not started till about 20 minutes past 5.   The plaintiff testified that a car was scheduled to go out at 5 o'clock; that he was there when it went out, but did not see it go, and did not know that it had gone out without a fender. Stutter, testifying for the plaintiff, said that there was a regular schedule by which one car was to leave at 5 o'clock, and the next at 10 minutes past 5.   The plaintiff's car went out on the west-bound track, —the left-hand one,—and was proceeding at the rate of about 4 miles an hour, Savage ringing the bell continually; and when the car had gone about 2 miles the plaintiff saw in the fog the illumination of the headlight of Stutter's car, about 15 feet ahead.   He put on the brake quickly, but did not reverse.   It was too late to prevent a collision, and he was crushed between the cars and received serious injury.   At the close of the evidence the defendant moved for a dismissal of the complaint on the ground that the plaintiff had "failed to establish negligence on the part of the defendant, or the absence of contributory negligence on the part of the plaintiff, and on the additional ground that on the burden of the proof the plaintiff has failed to sustain his case."   The motion was denied, and the defendant excepted.

In the charge the court submitted the following three questions to the jury:

"(1) Did Jerry Maher order and direct that the car No. 140 should be taken westwardly on the east-bound track on the day in question?   (2) Was the plaintiff guilty of contributory negligence  *  *  *  in his manner of operating the car while proceeding on the east-bound track, prior to the collision?   (3) What sum of money will furnish compensation for the plaintiff's injuries?"

The jury answered to the first question, "Yes"; to the second, "No"; and to the third, "$5,000."

The learned trial justice stated that he had disposed of the case under section 1187 of the Code of Civil Procedure, so that there might be no necessity for a new trial; and with a view of granting a nonsuit, in order that the appellate court, if it should decide that the plaintiff was entitled to a verdict, might so direct, and thus save a second trial. Subsequently the court granted a nonsuit, and delivered the opinion which is found in the margin.

We commend the use by the learned court of the provisions of the section which was intended to simplify and terminate litigation Doubtless, the facts in cases of this character are best developed upon

the first trial.    Every judge knows that when, on appeal from a judgment for the plaintiff in an action to recover damages for personal injuries, such judgment has been reversed on the ground that the plaintiff had failed to establish some essential fact,—as, for instance, a cautious looking out for an approaching car,—it very frequently happens on the second trial that the defect is supplied by the plaintiff after he has read the opinion of the appellate court, and that such testimony is often inconsistent with that of the same witness on the first trial.    The course of procedure authorized by section 1187 is calculated to prevent temptation to commit perjury at a second trial, and is a vast improvement over the method of nonsuit in former practice, whenever there is reasonable doubt in the mind of the court as to the plaintiff's right to recover.

The main contention of the plaintiff is that Maher was the alter ego of the defendant; that he knew that a car had started from the depot at 5 o'clock, and might possibly be compelled to return to the depot, in the contingency of its equipment being defective; that when he sent out the plaintiff's car he was bound to notify the plaintiff that Stutter's car had gone out, and might possibly return; and that he had also failed to notify Stutter that the plaintiff's car was to be sent out, after a short interval, on the west-bound track, in which case Stutter might have waited at the switch till the plaintiff's car had passed, before returning.    The question is thus raised whether the defendant's starter was bound to anticipate the return of the first car because of lack of equipment, and also its return on the west-bound track, and to caution the plaintiff in respect thereto.    It appears that such a circumstance was infrequent.    The case is not that of a new motorman, sent out on untried business, without definite instructions of the risks which he was likely to encounter.    The plaintiff had been on this road for 22 months, and for 8 months on other roads.    He knew the rule that a deficient car was required to return to the depot, and to do so on the west-bound track.    When he started, therefore, on the west-bound track, he took the risk of the possible, though infrequent, return of a car on that track, although it is established by the verdict that the starter directed him to take out the car on that track; for the plaintiff, as an experienced motorman, knew the general rule of all railroads in this state, that cars should proceed on the right-hand track, and he also knew that it was possible that he might meet a returning car or wagons coming in the same direction.    It was negligence for him to proceed on the west-bound track, on a morning so foggy that he could not see a distance of more than 15 or 20 feet, at any such rate of speed that he could not, as in fact he did not, stop his car in time to prevent collision with an approaching vehicle.    The case is easily distinguishable from cases such as Sheehan v. Railroad Co., 91 N. Y. 332, and Hankins v. Railroad Co., 142 N. Y. 416, 37 N. E. 466, where a train dispatcher controlled the movements of all trains by telegraph, and ordered two trains to proceed at specified times in opposite directions on the same track, the result being that the trains collided; for in those cases the dispatcher knew and controlled the exact scheduled hours of departure for each train, and was bound to arrange their movements so that they should not run the risk of col-

lision through any neglect of his. In the case at bar there was no means by which Maher could know that Stutter's car would return for repairs, or by which Stutter could notify him of such intention, and the occasions for such return were so unusual as not to require him to notify the plaintiff of such a possibility. In addition to this, the plaintiff knew the fact as well as the dispatcher, and therefore it was not the duty of the dispatcher to caution him. We cannot spell out from the facts any negligence in this respect. On the facts, we are clearly of opinion that the proximate cause of the accident was the act of the plaintiff and the conductor in taking out the car on the wrong track on a densely foggy morning, and that the negligence of Davis, the conductor, is to be imputed to the plaintiff, whose fellow servant he was. The conductor, as well as the plaintiff, knew the general rule of the road, and the fact that a car was scheduled to leave at 5 o'clock. He was guilty of negligence in taking out the car on the west-bound track on so foggy a morning, and this directly contributed to the accident.

While the verdict has established as one of the facts that the dispatcher ordered the conductor to take out the car on the west-bound track, it is to be observed that this depends solely on the testimony of the conductor, and in this he is contradicted by the dispatcher. It appears by the plaintiff's own testimony that he had been reprimanded by the dispatcher on a previous occasion for taking out a car on the wrong track. It does not appear what the weather was on that occasion, but it is difficult to believe that on a foggy morning the same dispatcher would have ordered the plaintiff to do what he had before expressly condemned.

We think the nonsuit was properly granted, and that the judgment should be affirmed.

CULLEN and HATCH, JJ., concur in the result. BARTLETT and WOODWARD, JJ., dissent.