as damages; but the burden of showing this was on the owner.
Tayloe v. Sandiford, supra; Richards v. Edick, 17 Barb. 260–266;
Laurea v. Bernauer, 33 Hun, 307. We think, therefore, the owner,
if he expects to have the amount specified as a penalty treated as
liquidated damages, should have shown the rental value of the prem-
ises, and that this would have been competent evidence. The case
in this regard is distinguishable from Liotta v. Abruzzo, 82 App. Div.
429, 81 N. Y. Supp. 877, where, although the amount was specified
as a penalty, it was clear that it was intended as liquidated damages;
and in that case, but for such construction, only nominal damages
could have been recovered, whereas here substantial damages could
be shown and recovered for the breach of the contract, without any
liquidated damage agreement. Cæsar v. Rubinson, supra.

It follows, therefore, that the judgment should be reversed and a
new trial granted, with costs to appellant to abide the event. All con-
cur.

---

### RYAN v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department. March 11, 1904.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—DANGEROUS EMPLOYMENT—
WARNING—CARE REQUIRED.

Where the excavations along a cable road, holding the wheels on which
the cable ran, were not of sufficient size to permit a man to remain therein
during the passage of a car, while oiling or adjusting the machinery, so
that it was necessary, in performing such work, for the oiler to place his
head and shoulders into the excavation, the railroad company was not an
insurer of his safety from injury by approaching cars while in such posi-
tion, and hence, having furnished a competent servant to keep watch and
warn the oiler of danger while in such position, was not guilty of negli-
gence in failing to provide him with a reasonably safe place in which to
work.

2. SAME—ASSUMPTION OF RISK.

The oiler having voluntarily consented to work, with knowledge of the
danger, and with the precautions afforded him, assumed the risk of injury,
notwithstanding such precautions.

3. SAME—FELLOW SERVANT.

Where it was the duty of plaintiff and his foreman to oil and reset cable
wheels in pits along a cable street railroad, and plaintiff and his foreman
took turns, one going into the pit, while the other watched for cars and
teams that might approach in order to give warning to the one in the pit
to escape before being struck, plaintiff's foreman, while on watch, was
plaintiff's fellow servant, so that defendant was not liable for injuries to
the plaintiff by reason of the foreman's negligence in the performance of
such duty.

Appeal from Trial Term, New York County.

Action by John J. A. Ryan against the Third Avenue Railroad Com-
pany. From a judgment in favor of plaintiff, and from an order deny-
ing defendant's motion for a new trial, it appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH. PATTERSON.
INGRAHAM, and LAUGHLIN, JJ.

Bayard H. Ames, for appellant.
Frederick W. Block, for respondent

HATCH, J.   This action is brought to recover damages for injuries claimed to have been received through the negligence of the defendant. The plaintiff was in the employ of the defendant as a helper to one Short, a foreman of the defendant, employed as an oiler.   It was the duty of these men to oil the wheels which carried the cable, the motive power of the car, beneath the surface of the street, and also to repair the same and to put in new wheels when required.   In the performance of his duties the plaintiff was subject to the directions of Short, the foreman.   In order to do the work it was necessary to go into an opening called a "pot hole," located between the rails and underneath the surface of the street.   It was claimed upon the part of the plaintiff, and evidence was given in support of the claim, that the "pot hole" was not large enough to permit him to remain therein during the passage of a car; that he was required to place his head and body below the surface of the street during the performance of his work, in consequence of which he was not able to protect himself from passing cars and other vehicles upon the street.   In order, therefore, to render the place safe during the performance of the work, it became necessary that some person should stand near the hole to prevent trucks from driving into it and to warn the plaintiff of the approach of cars in time for him to get out of the hole and enable them to pass.   While Short was the foreman, and the plaintiff was subject to his direction, yet they alternated in going into the hole and performing the duties required therein.   When plaintiff was in the hole, Short watched to warn vehicles, and also the plaintiff of the approach of the car; and plaintiff performed the same service when Short was in the hole.   On the 2d day of July, 1897, the plaintiff and Short were engaged in putting in a new wheel on Third avenue near Sixth street.   Plaintiff was in the hole, and Short was standing guard.   The cars were running on about a minute headway.   Plaintiff testified that he had been in the hole several minutes, had not received any warning of approaching cars, and, having a premonition that he ought to receive such warning, concluded to get out of the hole without it.   As he got up he saw a car approaching at full speed 10 or 15 feet away; that he attempted to jump from the hole; the car caught him before he could leave the track, inflicting the injuries of which he makes complaint.   Upon the part of the defendant it was claimed that the hole was sufficiently large for a person to remain therein during the passage of a car; that no warning was required of its approach, but that a guard was necessary for the purpose of keeping other vehicles passing on the street away from the hole, and of informing the person therein when it was necessary for him to come up that it was safe so to do; that upon the occasion in question Short was present attending to his duties, and that the plaintiff, without giving any notice, and when a car was close upon him, arose from the hole; that Short called to him to get back; that plaintiff failed to obey the direction, and attempted to get out, when he was caught by the car.   In general, these were the two features presented by the evidence in the case.   It is a question of some doubt as to whether the verdict can be supported upon the evidence if it rests upon the size of the hole.   It appeared without dispute that these holes were uniform in size.   Their dimensions were given, and from them it seemed

to leave space sufficient for a person to remain in the hole without lia-
bility to injury during the passage of a car. The size of the hole
seems to demonstrate such condition as a physical fact, and, if so, lia-
bility could not be predicated upon failure to warn of the approach of
a car, unless the person was ready at the time to leave the hole, when
warning as to safety would be required. We do not, however, rest
our decision upon this ground, as we think error was committed in the
submission of the case to the jury which necessarily requires a new
trial. Among other things, the court charged:

"I have decided, however, to present this case to you upon the theory that,
if certain facts are established to your satisfaction, the master could not dele-
gate certain duties to Mr. Short in this case, which I will later explain, so that
you may not misunderstand what I am aiming at. Any act of omission which
was incumbent upon Mr. Short, upon a certain aspect of the case, would be one
for which the defendant would be answerable. If it were not for that fact,
gentlemen, the plaintiff would not have a case."

The court then proceeded to charge that, if the "pot hole" was not
of sufficient size to enable the plaintiff to keep his entire body under the
level of the street, a duty was devolved upon the defendant to take such
precautions as would insure plaintiff a safe place to work, and that
it was incumbent upon the defendant, in order to make the place safe,
to have some one to warn the plaintiff of the approach of a car, and
warn away other vehicles. The court then stated:

"So that you see the crucial point of the case is, was the place where the
plaintiff was working at the time such a place that he could not get his entire
body within that opening underneath the level of the street?"

The court then submitted the question as to whether the plaintiff was
in such position as to be cognizant himself of approaching danger, and,
if so, that he was bound to take heed of it, and avoid it, if possible, in
order to relieve himself of contributory negligence. The court then
charged upon the subject of the warning required, based upon the
respective theories of the parties, and said, in that connection:

"I think it is proper to say to you that, as the case is presented, I do not
think the question of warnings has really much to do with this case."

The court then charged that, when a person is engaged in a business
which is dangerous and hazardous, the law imposes upon him the as-
sumption of the obvious risks of the employment, and that, if the master
has discharged all the duty resting upon him, and an accident happens
through no fault in this respect, but because the work itself is danger-
ous, there exists no liability upon the part of the master. And finally
the court charged:

"If you find, gentlemen, in this case, therefore, to sum up, that the accident
happened solely through the negligence of the defendant, because of a failure
on the part of Mr. Short to warn the plaintiff, and because you believe from
the facts that the plaintiff could not have worked under any other conditions
than those which would have compelled him to keep his body beneath the level
of the ground, and would not have permitted him to see an approaching car
unless somebody warned him; if you believe that, and if you also believe that
the plaintiff did not, by any act of his, contribute to this accident by any neg-
ligent act—then you have a right to find for the plaintiff; otherwise for the
defendant."

To these several quoted portions of the charge the defendant excepted, and it requested the court to charge:

"If it was the duty of the foreman, Short, to give warning of the approach of the car, and if his failure to give such warning was the cause of the accident, then such failure on his part is the negligence of a fellow servant of the plaintiff, and not of an alter ego of the defendant, and your verdict in that event must be for the defendant."

The court refused so to charge, and the defendant excepted. Upon the motion for a new trial the court held that Short was the alter ego of the defendant; that its duty extended not only to providing a competent person to stand guard and give warning as the circumstances required, but that the duty extended to the performance of the act of warning; and therefore that the defendant could not relieve itself from liability by providing a competent person, but was likewise responsible for the manner in which he performed his duties. Under the submission by the court the evidence justified the jury in finding that the hole was too small for the plaintiff to remain in the same during the passage of a car, and, finding this fact, they were instructed that the duty of the master was to provide a safe place commensurate with the dangers to be encountered, and that the obligation resting upon the master was not only to provide a safe place, but to see that it continuously remained safe, even to the detail of giving the warning which the circumstances required. It is evident, therefore, that the obligation which was imposed upon the master by the charge was that of insuring the safety of the plaintiff during the performance of his work. The obligation which rests upon the master in respect of the place where the servant is to perform his work is to provide a reasonably safe place in which to prosecute the same considering the nature of the service in which the employé is engaged. When he has discharged that obligation, it meets all the requirements of the law, and there is no liability imposed upon the master for injuries which result to the servant proceeding from the manner of the performance of a detail of the work. Ward v. Naughton, 74 App. Div. 68, 77 N. Y. Supp. 344. The servant assumes, in entering upon his employment, all of the risks incident thereto, and of all dangers which are open and obvious. Crown v. Orr, 140 N. Y. 450, 35 N. E. 648. In the present case the plaintiff had full and complete knowledge of the situation. He knew the character of the work and the place where he was to perform it. He knew the dangers to be apprehended and guarded against. He was informed concerning the approach of the cars and the general course of management of other vehicles upon the street. He was aware that proper protection in his employment required that somebody should be placed to warn him of approaching danger which he was unable to observe. Under these circumstances he had the right to expect, and also to demand, from the defendant a provision for warning which would insure a reasonably safe place considering existing conditions. The plaintiff was informed that the defendant had undertaken the discharge of this obligation by appointing a competent person to guard the place where he worked, and so make it safe. After such provision was made, he entered voluntarily

86 N.Y.S.—68

upon the performance of his duties. The defendant then, having discharged towards him every obligation which the law imposed upon it, could not be charged with the neglect of the person stationed to give the warning in failing to give it, unless the rule of liability be so far extended as to make the defendant an insurer of plaintiff's safety. This obligation it did not assume; nor does the law impose it. The defendant having discharged the obligation which the law imposed, the plaintiff must be deemed to have assumed the risks incident to that situation, among which was the risk that the person placed to warn him of danger might become inattentive, careless, and neglectful of his duties, and omit to give the warning when required. In Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905, the court, through Judge Peckham, said:

"But the manner of the performance of each of the various details of the work by which, as a whole, it was to be conducted, rested necessarily upon the intelligence and care and fidelity of the servants to whom these duties were intrusted. It can't be that every time a blast was exploded and the men came back the manner of their distribution for work was a duty of the master, and that the order of the foreman, mistakenly or negligently given, must be regarded as the order of the master in filling a duty to furnish a safe place to work in. It is, as it seems to me, a detail of the working or management of the business, the risks attending which have been assumed by the party taking employment."

This language finds precise application to the facts of this case, and is controlling of it. Its doctrine has never been questioned, but, on the contrary, has been repeatedly reaffirmed by the Court of Appeals (Perry v. Rogers, 157 N. Y. 251, 51 N. E. 1021) and in the Supreme Court (Ulrich v. N. Y. C. & H. R. R. Co., 25 App. Div. 465, 51 N. Y. Supp. 5), and in numerous other cases. In assuming the risk of this situation the person selected by the master to perform it, if he be competent in all respects to discharge it, stands in relation to the plaintiff, no matter what be his grade, as a co-servant, and for his act of negligence the master is not responsible.

The court below relied upon Hankins v. N. Y., L. E. & W. R. R. Co., 142 N. Y. 416, 37 N. E. 466, 25 L. R. A. 396, 40 Am. St. Rep. 616. The neglect in that case was of a train dispatcher in ordering the movements of two trains, which resulted in their collision, whereby a servant was injured, and it was held that in the discharge of that particular duty it was the master who acted. The train dispatcher controlled the entire situation with respect to the movements of the trains, was acquainted with and controlled the schedule by which they moved. This was the particular business of the master, and its performance could not be delegated. The act itself created the condition which made the place unsafe, and under such circumstances the master may not shelter himself from responsibility behind the act of the servant. The distinction between that case and the present is pointed out in Savage v. Nassau Electric R. R. Co., 42 App. Div. 241, 59 N. Y. Supp. 225, affirmed on appeal 168 N. Y. 680, 61 N. E. 1134. The court was therefore in error in charging that the failure of Short to warn the plaintiff was the act of the master, which could not be delegated, and the defendant was entitled to the charge upon that subject which it requested.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.