## McLAUGHLIN v. MANHATTAN RY. CO.

(Supreme Court, Appellate Division, First Department.  February 23, 1906.)

**1. MASTER AND SERVANT—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.**

An elevated railway structure had three tracks, between each of which was a narrow board walk, and which had a wider walk on the outside of each of the outer tracks. A servant, engaged in repair work on the. structure, voluntarily walked on one of the inside walks instead of an outside walk, and, although he had worked on the structure for nearly a month and knew that trains were passing constantly at the place in question, failed to keep any lookout for approaching trains, or to take any precautions to protect himself. While he was in that situation a local train approached him on one track, and in throwing his body away from it he came in contact with an express train on the next track and was killed. *Held*, that he was guilty of contributory negligence.

**2. SAME—ASSUMPTION OF RISK.**

A servant *held* to have assumed the risk of any danger in his manner of work.

**3. EVIDENCE—OPINION EVIDENCE—COMPETENCY.**

In an action for the death of a servant, testimony of a nonexpert witness, based on his experience as a workman and foreman of work at the place of the accident, that it would be a "good idea" to establish a certain rule for the protection of workmen at the place in question, and that they could not be protected without such a rule, was incompetent.

O'Brien, P. J., and Clarke, J., dissenting.

Appeal from Trial Term, New York County.

Action by Catharine McLaughlin, as administratrix of John Mc-Laughlin, deceased, against the Manhattan Railway Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and LAUGHLIN, INGRAHAM, McLAUGHLIN, and CLARKE, JJ.

J. Osgood Nichols, for appellant.

J. Noble Hayes, for respondent.

McLAUGHLIN, J. On the 28th of November, 1902, the plaintiff's intestate was struck and killed by one of the defendant's trains, and she brings this action to recover the damages alleged to have been sustained, upon the ground that his death was caused by defendant's negligence. The accident occurred about 8 o'clock in the morning, at a point a little south of the intersection of Seventy-Sixth street and Columbus avenue, at which place the defendant maintains an elevated railroad structure on which trains are operated. The intestate for about two months preceding the accident had been employed by the defendant in making certain repairs upon the structure; one month on this particular line—Sixth avenue. For two days immediately preceding the 28th he did not work, and this seems to have been taken by him as a sufficient ground for discharge, for on the morning of the accident he applied to the foreman in charge of the work (one Murphy) for reinstatement. Murphy, at the time, was upon the elevated structure, and he told the intestate he could go to work at any of the places south of there which had been designated by chalk

marks as needing repairs. The repairs which were being made under Murphy's supervision extended from Seventy-Sixth to Fifty-Ninth streets. Between these points there are three tracks upon the structure. The north and south bound local tracks are located respectively on the east and west side of the structure, and the express track is in the center. The distance between the nearest rails of the express and local tracks is 6 feet 3 inches. In the center of this space on either side is a board walk constructed of four six-inch boards, the width of which is sufficient to give a clear space of 29½ inches between parallel cars passing on both tracks, except under certain conditions, when the space might be narrowed three or four inches by the swaying of passing cars. Beyond the local tracks, on either side of the structure, there are also two board walks, each of the width of 5 feet 3 inches. Between the outside walk and the track extend hand rails. These outside walks are used by workmen in going to and from their work, and there was some evidence that the walk between the tracks is also used for that purpose, as well as for workmen while at work to escape from passing trains. The intestate, after Murphy told him he could go to work, proceeded southerly on the walk between the express and the south-bound local tracks. There was a chalk mark indicating repairs were needed only a few feet from where Murphy stood (which was on this same walk); but he passed this, and, after going between 150 and 200 feet, a local train overtook him and a little later an express. As the express train passed Murphy he called to the intestate to look out for it, and, as he did so, to use Murphy's own language, the intestate "shied from the local and then came in contact with the step of the express." He was knocked down and instantly killed. The plaintiff contended at the trial, and this contention seems to have been adopted by the trial court, that upon the facts a question was presented for the jury to say whether the defendant had performed the duty which it owed to the intestate, by furnishing him a reasonably safe and secure place to walk or stand upon between its tracks while the trains were passing and in notifying him of the approach of the trains, and promulgating and enforcing reasonable rules and regulations with reference to the use of the walk and the operation of the trains. The jury found in favor of the plaintiff, and defendant appeals.

I am of the opinion that the judgment is erroneous and should be reversed. The proof showed that upon the tracks at this point trains were passing and repassing every few minutes—indeed, at some hours of the day, nearly every minute; that the intestate was familiar with this fact, because he had been engaged upon the tracks at this point for nearly a month, during which time trains had passed hundreds of times. Indeed, the testimony of plaintiff's witness Murphy, who was not at the time of the trial in the employ of the defendant, and had not been for upwards of two years, was to the effect that he had been caught between these trains as the intestate was at the time of the accident "lots of times, hundred of times; every day"; and that it was a safe place, if the person knew what to do, that is, braced himself and stood sideways.

The intestate, in going to the place where he desired to work, could have taken the walk on the outside of the tracks and in that case he would have been entirely out of danger from passing trains. He, however, of his own volition, took the center walk, and when he did so he must have known that while upon that walk both the express and local trains were liable to pass. He was therefore obligated to look out for approaching trains, and there is not the slightest evidence in the record that after he started on this walk he looked to see whether a train were approaching or that he took any precautions to protect himself when the trains were passing; on the contrary, the only evidence is that, when Murphy called to him, instead of turning sideways and allowing the trains to pass, he threw his body away from the local train, and in doing so it came in contact with the express. Not only this, but when the intestate selected the center walk instead of the outside one the risk of using the one selected was open and obvious to him, and therefore he assumed whatever danger there was in using it. This is but applying the general rule, which is that a servant, when he accepts the service, does so subject to the risks incidental to it, and where the machinery, implements or structures of the employer's business are at that time of a certain kind or condition, and a servant knows it, he can make no claim upon the master to furnish different safeguards or appliances (Sweeney v. Berlin & J. E. Co., 101 N. Y. 520, 5 N. E. 358, 54 Am. Rep. 722); that he assumed not only the risks incident to the employment, but obvious dangers, and, if he voluntarily enters into or continues in the service, having knowledge or means of knowing the dangers involved, he assumes the risk (Crown v. Orr, 140 N. Y. 450, 35 N. E. 648; De Graff v. N. Y. C. & H. R. R. Co., 76 N. Y. 125; Ryan v. Third Avenue R. R. Co., 92 App. Div. 306, 86 N. Y. Supp. 1070).

No rule which could have been adopted by the defendant, unless it had stopped running its trains while the intestate was on his way to work, would have protected him. He knew what the situation was, and he knew the danger which he was liable to encounter, if the express and local passed him at the same time while he was upon this walk. The real cause of the accident was the failure of the intestate to notice the approach of the express train, and probably when Murphy called to him he thought he was warning him of the local, and for that reason he swerved in the opposite direction, and in doing so was struck by the express.

This being the condition of the evidence, at the conclusion of the trial it seems to me the court erred in denying defendant's motion to direct a verdict in its behalf; certainly in denying its motion to set aside the verdict, because the intestate was not only guilty of contributory negligence, but he assumed the risk of being injured by passing trains when he used the center walk instead of the outside one.

I am also of the opinion that the court erred in permitting the witness Murphy to answer the following questions:

"Q. What do you say, from your experience as a workman and foreman working on the elevated railroad, in regard to the security which would be afforded to workmen by having a rule requiring that all men working on the

tracks upon which trains are run should work under a red flag, or that a flag-man should be stationed at either end of that gang, no matter how large or small it may be? A. You want my opinion of the rule? Q. Yes. A. I think it would be a very good idea. It would be safe for men that is working on the road. Q. Do you think, in view of your experience, that men can be properly protected from passing trains without such a uniform rule? A. Why, no."

Appropriate objections were made to the questions as well as motions to strike out the answers thereto. The objections were overruled, and the motions denied and exceptions duly taken. The witness was not an expert. There was nothing to indicate that he had particular skill in the management and operation of a railroad of this character. It was, at most, a mere expression of opinion or a guess upon his part that a rule of the kind and character of the one suggested might be "a very good idea," and that workmen could not be protected without such a rule. Manifestly such expressions or conclusions are not the evidence which the law requires in order to justify a verdict that a defendant has been remiss in its duty in not promulgating or enforcing a rule for the protection of servants in its employ.

Upon both grounds, therefore, I am of the opinion that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

INGRAHAM and LAUGHLIN, JJ., concur. O'BRIEN, P. J., and CLARKE, J., dissent.