PETERSON v. J. B. & J. M. CORNELL CO.

(Supreme Court, Appellate Division, Second Department.  June 18, 1909.)

Appeal from Trial Term, Kings County.

Action by Hendrick L. Peterson against the J. B. & J. M. Cornell Company. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, RICH, JENKS, and MILLER, JJ.

Charles F. Brown, for appellant.
Edward J. McCrossin, for respondent.

PER CURIAM. Judgment and order affirmed, with costs.

RICH, J. I dissent. The relation of master and servant existed between the parties, and the right of action is predicated upon the common-law liability of a master. The defendant was engaged in the performance of a contract for the erection of a building, to rest upon concrete piers, which at the time of the accident had been completed. The material to be used in the building was delivered at a point a short distance from its site by rail, and the loaded cars hauled from such point to a place opposite the piers by a dummy engine apparently owned and operated by the railroad company. For the purpose of raising this material from the cars to the tops of the piers, where it was to be used, the defendant furnished for the use of its employés a stationary engine and derrick, with their appliances, and it is not shown that the defendant had any knowledge that these appliances were used for any other purpose. This engine was placed on the top of a pier, three or four rows westerly from the railroad tracks, and the derrick on the third pier of the same row, north of the engine. The plaintiff was one of a gang of six men employed in transferring the material from the cars to the tops of the piers by means of the derrick. The work seems to have been under the charge of a general foreman (Anderson), aided by an assistant (Roarke), who had charge of the assembling of the iron to be used in the structure, and seeing that it was correctly sent to the places on the tops of the piers where it was to be used, and the gang of which plaintiff was a member was under the immediate supervision and direction of an employé designated as the "pusher"—Agrillo. Roarke testified that, prior to the day of the accident, the loaded cars had always been drawn to the place where unloaded by a locomotive. On the day of the accident there were two or three loaded cars, standing on the tracks a short distance south of the piers, which it was necessary to move for the purpose of unloading. Roarke was unable to procure a locomotive, and suggested a scheme for moving them with the stationary engine, which he submitted to Anderson, who gave it his approval, and it was left to Agrillo to work out the details. Under his direction a rope was run from the drum or niggerhead of the stationary engine, to and through a block at the foot of the derrick, and thence, through blocks attached to the rails of the track, to the next to the last loaded car, to which it was fastened. The blocks were fastened to the rail by a rope wound around it several times. When these details were completed the men composing the gang, including Agrillo, went to the rear of the cars to help move them by pushing. The engineer could not see the cars from his station, and the foreman, Anderson, went to the top of one of the piers, from which point he had a view both of the engineer and men at the cars, and, upon receiving a signal from Agrillo to start the engine, communicated it to the engineer. After the cars were started, Anderson left the pier. As the cars were being moved, one of the employés discovered that the rope holding the northerly block to the rail was giving way under the strain and signaled Agrillo to stop. The latter, being unable to see the engineer, could not give the signal, and 30 seconds later the edges of the rail severed the rope and the block flew back, striking plaintiff

and inflicting such injuries to his leg as to necessitate its amputation 4½ inches above the knee. The plaintiff had a verdict for $25,000.

The specific negligence on which plaintiff bases his right of recovery is, first, in the failure of the defendant to furnish some covering, to be placed around the rail, to prevent its edges from cutting through the rope, and, second, in not having a man properly stationed, through whom signals could be given to the engineer, if danger became apparent; and these were the two grounds of liability submitted to the jury. There is no proof or contention that the appliances furnished by the defendant were not proper, adequate, and reasonably safe for the purposes for which they were furnished, viz., raising the materials by means of the derrick to the top of the concrete piers; that the defendant knew of their use for any other purpose; or that the defendant's foreman and assistant were not competent and fully qualified for the discharge of the duties of superintendence with which they were charged. The accident happened through the use of the appliances for a purpose other than that contemplated by the defendant, concurring with the failure of the foreman to remain in a position from which he could have received a signal from the workmen and communicated it to the engineer in time to have stopped the engine and relieved the strain upon the block before its fastenings parted. The place provided by the defendant for the plaintiff to perform his work was upon the ground between the pier on which the derrick was located and the loaded cars, and was a safe place.

In the absence of evidence that defendant had knowledge of the additional use which was being made of the appliances, no duty rested upon it to furnish material for protecting the rope used in attaching the block to the rail, and it cannot be held liable for such omission, or the results of the unauthorized and unknown user by their employés of the appliances furnished. The defendant having complied with all the requirements of law by furnishing a safe place for the plaintiff to work, sufficient and reasonably safe appliances for the purpose for which they were furnished, and competent and qualified persons to superintend the work, it follows that the judgment cannot be sustained, unless the negligent acts complained of involved an affirmative duty of the master, in the performance of which the negligence of the foreman and assistant was the negligence of the defendant. The defendant, having furnished a competent foreman and assistant, might intrust to them the superintendence and direction of the work, without being liable for their negligence in matters of detail. The affixing of the blocks to the rail, and the manner of so doing, was a mere detail of the work committed to their care and superintendence, in the carrying out of which, if negligent, the defendant was not responsible. Farley v. Robert White Engineering Co. (decided by this court March 12, 1909) 115 N. Y. Supp. 635. The act of the foreman in leaving a point from which he could receive and communicate to the engineer a signal in case of apparent danger, after directing the starting of the engine, if negligent, was an act respecting the manner of doing the work, and as such a detail of the work, for which the defendant was not liable. Farley v. Robert White Engineering Co., supra; Ryan v. Third Avenue R. R. Co., 92 App. Div. 306, 86 N. Y. Supp. 1070;

117 N.Y.S.—39

Curran v. Manhattan Ry. Co., 118 App. Div. 347, 103 N. Y. Supp. 351. I must vote for a reversal.

JENKS, J., concurs.